IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| RQ SQUARED, L.L.C., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 10-6108-CV-SJ-JTM |
| UNITED STATES OF AMERICA, | ) ) ) ) |
| Defendant. | ) |

# **ORDER**

Plaintiff RQ Squared, L.L.C. ("RQ") is a Missouri technology company that specializes in "reverse logistics," which, in its most basic sense, typically involves the process of returning goods from consumers to online retailers. In June of 2005, RQ applied to the United States Postal Service ("USPS") seeking to become an approved USPS vendor. In that application, RQ submitted a sample of their "Dual Label system."[1] Ultimately, however, the USPS did not select RQ as an approved vendor.[2] RQ now claims that in the discussions involving its application to become an approved vendor, the USPS "appropriated" RQ's idea for the Dual Label System.

---

[1] In brief, the Dual Label system provided customers with a label containing a bar code readable by the USPS and a second bar code readable by a private parcel carrier (*e.g.*, Federal Express or United Parcel Service). With such a Dual Label, a disgruntled customer wishing to return used, damaged, or defective products could simply place the package in the United States mail which would then deliver it to the nearest private parcel carrier bulk mail center (rather than having the customer locate the nearest private parcel carrier bulk mail center).

[2] It does not appear from RQ's complaint that the USPS formally denied the application. According to the application, the USPS "suddenly stopped responding to correspondence from RQ" in June of 2007.

On August 20, 2010, RQ filed a complaint against the United States in the Court of Federal Claims alleging that it was entitled to "just compensation" from the United States for the USPS' violation of the Fifth Amendment when it took property from RQ. On December 3, 2010, the United States moved to dismiss RQ's lawsuit in the Court of Federal Claims. However, on February 9, 2010, the court stayed the case pending a decision by the United States Supreme Court in *United States v. Tohono O'odham Nation*, 559 F.3d 1284 (Fed. Cir. 2009), *cert. granted*, 130 S.Ct. 2097 (Apr. 19, 2010) (No. 09-846)[3].

At the same time that it was pursuing the aforementioned litigation in the Court of Federal Claims, RQ also filed the instant case against the United States before this Court. In the complaint before this Court, RQ alleges that the United States is liable to RQ under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA"), for breach of a fiduciary duty by failing to deal in good faith with a partner. The United States has moved to dismiss RQ's FTCA action.

Litigation against the federal government or one its agencies or employees raises concerns about sovereign immunity. It is a well-settled doctrine that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of consent to be sued in any court define the court's jurisdiction to entertain the suit." *Hercules, Inc. v. United States*, 516 U.S. 417, 422, 116 S.Ct. 981, 985 (1996). Thus the initial issue before the Court is

---

[3]  At issue in the *Tohono O'odham Nation* case (and the United States' motion to dismiss before the Court of Federal Claims) is the proper application of the statute that divests the United States Court of Federal Claims of jurisdiction over "any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500.

whether the United States has consented to be sued for the cause of action asserted by RQ. If no consent has occurred, then this Court lacks subject matter jurisdiction to consider RQ's claims.

The FTCA, of course, constitutes consent to be sued, waiving the sovereign immunity of the United States and allowing the government to be liable in tort generally "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. However, the FTCA is a <u>limited</u> waiver of sovereign immunity with respect to tort claims against the United States, subject to substantive exceptions. *Smith v. United States*, 507 U.S. 197, 199, 113 S.Ct. 1178, 1180 (1993); *Kaffenberger v. United States*, 314 F.3d 944, 950 (8th Cir. 2003). Moreover, the "limitations and conditions upon which the government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702 (1981) (*quoting Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273 (1957)). Accordingly, the "party bringing a cause of action against the federal government bears the burden of demonstrating an unequivocal waiver of immunity." *Bacon v. United States*, 661 F.Supp. 8, 10 (E.D. Mo. 1986), *aff'd*, 810 F.2d 827 (8th Cir. 1987).

In this case, the United States asserts that RQ's FTCA lawsuit is barred by one particular limitation on the scope of the FTCA's waiver of sovereign immunity – the "misrepresentation exception" which excludes from the FTCA "[a]ny claim arising out of . . . misrepresentation, deceit, or interference with contract rights. . . ." 28 U.S.C. § 2680(h). This exception applies to a tort claim arising from a plaintiff's reliance on governmental misinformation or misrepresentations by agents of the government. *See*, *e.g.*, *National Manufacturing Co. v. United States*, 210 F.3d 263, 276 (8th Cir. 1954) ("The intent of the section is to except from the

3

[FTCA] cases where mere 'talk' or failure to 'talk' on the part of a government employee is asserted as the proximate cause of damage sought to be recovered from the United States.").

The Supreme Court has handed down two decisions discussing the proper circumstances for the application of the misrepresentation exception. *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089 (1983); *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294 (1961). These cases merit some brief discussion.

The plaintiffs in *Neustadt* had purchased a home which had been inspected by an appraiser for the Federal Housing Administration ("FHA"). The inspector found no defects which would have disqualified the property for mortgage insurance. *Id*. at 698, 81 S.Ct. at 1296. However, after the plaintiffs moved into the house, they found numerous defects (which should have been discovered by the FHA inspector). *Id*. at 700, 81 S.Ct. at 1697. The plaintiffs' lawsuit eventually reached the Supreme Court which concluded that the plaintiffs' claim was barred by the misrepresentation exception to the FTCA. The Court reasoned that the plaintiffs' action for breach of "the duty to use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs" was within the commonly understood legal definition of misrepresentation. *Id*. at 706, 81 S.Ct. at 1300.

Twenty-two years later, in *Block*, the Supreme Court revisited the misrepresentation exception to the FTCA and sought to clarify the distinction between an action based on misrepresentation and an action based on an independent tort. In *Block*, the plaintiff applied for a Rural Housing Loan from the Farmers Home Administration ("FmHA"). *Block*, 460 U.S. at 291, 103 S.Ct. at 1090. After the loan was approved, the plaintiff contracted with a builder to

4

construct a house. *Id.* The construction contract required the builder's work to conform to plans approved by the FmHA, and granted FmHA the right to inspect and to reject any non-complying work or materials. *Id*. To that end, an FmHA official inspected the house and found no defects. *Id*. at 292, 103 S.Ct. at 1091. Unfortunately, after the plaintiff moved into the house numerous defects were discovered.. *Id.* When the case reached the Supreme Court, the Court rejected the argument that the case was controlled by *Neustadt*:

> [T]he essence of an action for misrepresentation . . . is the communication of misinformation on which the recipient relies. The gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a "Statement of FHA Appraisal" prepared by the Government. [The plaintiff in *Neustadt*] alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal.

*Id*. at 296, 103 S.Ct. at 1093. In contrast, the *Block* plaintiff had stated a viable cause of action under the RESTATEMENT (SECOND) OF TORTS § 323 (1965) – the Good Samaritan doctrine. *Block*, 460 U.S. at 297, 103 S.Ct. at 1094.

The *Block* court distinguished the FmHA's duty to use due care to ensure that the builder followed previously approved plans and cure all defects before completing construction from the FmHA's duty to use due care in communicating information to the plaintiff. *Id*. at 297-98, 103 S.Ct. at 1094-95. Thus, the Court found that even though there may not be a cause of action for negligent misrepresentation, a claim could still lie for damages caused by other aspects of the government's conduct. *Id*. at 298, 103 S.Ct. at 1094.

In this case, RQ seeks damages from the United States because it alleges that the USPS "appropriated" the Dual Label system during the course of discussions between RQ and the USPS concerning RQ's application to become an approved vendor. However, it is not enough to

5

simply allege that "someone stole my idea"– a plaintiff must establish that the other party owed a duty to the plaintiff and that the duty was breached by the use of the plaintiff's idea. Such a duty may arise in any number of ways. In this case, however, RQ does not allege that Dual Label system was protected by any patent or copyright. Nor does RQ assert that it had a contractual or implied contractual relationship with the USPS. Instead, RQ claims that it and the USPS were engaged in a "joint venture." RQ then alleges that this joint venture "imposed a duty upon the USPS to act with utmost fairness and square dealing throughout the enterprise contemplated in the joint venture."

Under the substantive law of Missouri (which applies to the present dispute), in order to plead a joint venture, a complaint must establish:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*State ex rel Henley v. Bickel*, 285 S.W.3d 327, 331-32 (Mo. 2009) (*en banc*). In pleading the existence of the joint venture in this case, the linchpin of RQ's complaint alleges:

> The joint venture between RQ and the USPS was express and implied based upon the numerous email communications, vendor applications, label development and oral communications and meeting held between joint venturers.

RQ's complaint then offers several examples of such communications and generally alleging that the "USPS represented on hundreds of occasions that [RQ] would become its service provider." In its motion to dismiss, the United States argues that these communications relied upon by RQ in believing a joint venture existed place this case squarely within the misrepresentation exception to the FTCA.

In response to the motion to dismiss, RQ concedes that its complaint "alleges facts which could support a claim for misrepresentation against the USPS." However, RQ further argues that "the injury it suffered arises from breach of a separate duty imposed by law upon joint venturers." In essence, then, RQ claims that its case is more in line with the Supreme Court's decision in *Block* wherein the Court found that the misrepresentation exception would not "bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block*, 460 U.S. at 297, 103 S.Ct. at 1093. The problem with RQ's argument, however, is that the existence of a supposed different duty hinges upon the representations made by the USPS that allegedly created the joint venture. To that end, the Eighth Circuit has found:

> Even if a claim purports to be grounded in theories other than misrepresentation, the exception set out in 28 U.S.C. § 2680(h) bars the action if deceit or misrepresentation is a factor relied upon to maintain the suit.

*Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 178 (8th Cir. 1978). *See also Metz v. United States*, 788 F.2d 1528, 1534 (11th Cir. 1986) ("a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim"). Here, it is not possible to find a fiduciary duty without relying upon alleged representations of the USPS establishing the joint venture. Therefore, the misrepresentation exception to the limited waiver of sovereign immunity under the FTCA bars this action and mandates dismissal for lack of subject matter jurisdiction.

Accordingly, it is

**ORDERED** that the defendant's *Motion To Dismiss*, filed November 19, 2010 [Doc. 5] is **GRANTED**.

                              */s/ John T. Maughmer*
                              **JOHN T. MAUGHMER**
                              **U. S. MAGISTRATE JUDGE**